UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| DARIUS GAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.   ) | Case No. 4:12-cv-4066-SLD-JAG |
| ) | |
| CITY OF EAST MOLINE, East Moline ) | |
| Police Officers DOUG AVERILL and JOHN ) | |
| SHOWALTER, ) | |
| ) | |
| Defendants. | |

ORDER

Plaintiff Darius Gay alleges that on February 22, 2012, Defendants Averill and Showalter unlawfully seized, arrested, and battered him. Plaintiff sued the Defendant-Officers and their employer, the City of East Moline, on a number of grounds. The Court has jurisdiction over Plaintiff's Section 1983 claims pursuant to 42 U.S.C. § 1331 and 1343(a). The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 42 U.S.C. § 1367(a).

The Defendants move to dismiss Plaintiff's state law battery claim (Count VI), arguing that Plaintiff failed to state a claim upon which relief can be granted. ECF No. 10. Defendants also argue that Plaintiff's claim for punitive damages should be dismissed. The Court will first address whether Plaintiffs have stated a claim and then move onto whether Plaintiff's request for punitive damages stemming from the alleged battery is barred under Illinois's Tort Immunity Act. *See id.*

A battery occurs when a defendant intentionally causes harmful or offensive contact with the plaintiff. *See Bakes v. St. Alexius Med. Ctr.*, 955 N.E.2d 78, 85 (Ill. App. 2001). As to Defendant Averill, Plaintiff alleges that "Averill grabbed Plaintiff from behind and slammed

Plaintiff onto the sidewalk" and "Averill elbowed Plaintiff in the head."  Am. Compl. at ¶ 20, ECF No. 6.  As to Defendant Showalter, Plaintiff alleges that "Showalter kicked Plaintiff in the back."  *Id.* at ¶ 24.  Plaintiff also alleged that this contact was harmful: he allegedly received injuries on account of the Defendant-Officers' actions.  *Id.* at ¶ 46.  Defendants' sole argument is that the Court is obliged to ignore these allegations because under the heading "Count VI," Plaintiff "merely realleges paragraphs 1 though [sic] 49."  The Federal Rules encourage clear and concise pleading, see Fed. R. Civ. Pro. 8(d) and 10(b), and "verbosity does not make for clarity," see *Kainz v. Anheuser-Busch, Inc.*, 194 F.2d 737, 744 (7th Cir. 1952).  Plaintiff's Amended Complaint is not confusing and gives the Officer-Defendants fair notice that Plaintiff is accusing them of battery and also gives them fair notice of the grounds for the alleged battery.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Defendants' motion to dismiss Plaintiff's battery claim is DENIED.

I. **The Tort Immunities Act**

Plaintiff requests punitive damages against the individual officers for their alleged battery.  Am. Compl. at ¶ 70(b).  Defendants assert that the Illinois Tort Immunities Act shields them from being held liable for punitive damages as the result of any alleged battery.  Illinois courts have not addressed the question of whether a Plaintiff can recover punitive damages against police officers sued in their individual capacities and district courts in this district have diverging views on the issue.  *See Campbell v. City of Johnston City*, No. 05-cv-4072, U.S. Dist. LEXIS 35617, at *7-9 (S.D. Ill. Dec. 14, 2005).

The Illinois Tort Immunities Act is comprised of multiple, more specific Acts.  Of relevance here is the Local Governmental and Governmental Employees Tort Immunity Act, see 745 ILCS 10/1-101, *et seq.*, which is further divided into ten Articles.  Only Article II is relevant to this order.  *See* 745 ILCS 10/2-101, *et seq.*  Article II is further divided into three Parts but

only Parts 1 and 2 need be discussed. Part 1 is entitled "Immunity of Local Public Entities." Part 2 is entitled "Immunity of Public Employees."

Defendants argue that Plaintiff is barred from recovering punitive damages against them for civil battery pursuant to 745 ILCS 10/2-102. Section 2-102 is found in Part 1 of Article II and states that a "public official" cannot be held liable for punitive damages in certain circumstances:

> [A] local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party. In addition, no public official is liable to pay punitive or exemplary damages in any action arising out of an act or omission made by the public official while serving in an official executive, legislative, quasi-legislative or quasi-judicial capacity, brought directly or indirectly against him by the injured party or a third party.

As the statute indicates, Section 2-102 shields Defendants Averill and Showalter from punitive damage liability if (1) they are "public officials" and (2) they allegedly battered Plaintiff "while serving in an official … capacity."

Plaintiff argues that the Defendants are not "public officials." The Illinois Tort Immunity Act does not define "public official." One district court analyzed the issue and concluded that "public official" means "a public employee who exercises discretion in the performance of uniquely governmental functions." *Reese v. May*, 955 F. Supp. 869, 875 (N.D. Ill. 1996). The court in *Reese* found that police officers are public officials and are therefore immune from punitive damages liability under Section 2-102. Plaintiff candidly argues that *Reese* was wrongly decided.

## II.   *Reese*'s "Public Official" Analysis

The Court will first discuss how the court in *Reese* reached the conclusion that "public official" means "a public employee who exercises discretion in the performance of uniquely governmental functions." *Reese*, 955 F. Supp. at 875. The Court will then itself analyze whether

police officers are "public officials" for the purposes of the Tort Immunity Act. To begin with, the court in *Reese* acknowledged that the section being analyzed—Section 2-102 (found in Part 1 of Article II)—uses language that substantially overlaps with Sections 2-201 and 2-213 (both found in Part 2 of Article II). *Id.* at 873. The three sections can be viewed next to each other here:

| Part 1: Section 2-102 | Part 2: Section 2-201 | Part 2: Section 2-213 |
| --- | --- | --- |
| [A] public official | [A] public employee serving in a position involving the determination of policy or the exercise of discretion | [A] public employee |
| is [not] liable to pay punitive or exemplary damages in any action arising out of an act or omission made by the public official | is not liable for an injury resulting from his act or omission in determining policy | is not liable to pay punitive or exemplary damages in actions brought against the employee based on an injury allegedly arising out of an act or omission occurring within the scope of employment |
| while serving in an official executive, legislative, quasi-legislative or quasi-judicial capacity, brought directly or indirectly against him by the injured party or a third party. | when acting in the exercise of such discretion even though abused. | of such an employee serving in a position involving the determination of policy or the exercise of discretion when the injury is the result of an act or omission occurring in the performance of any legislative, quasi-legislative or quasi-judicial function, even though abused. |

A notable difference is that Section 2-102 uses the terms "public official" and "official … capacity" whereas Section 2-201 uses the terms "public employee serving in a position involving the determination of policy of the exercise of discretion … acting in the exercise of such discretion," and Section 2-213 uses the terms "public employee" and "scope of employment." Nonetheless, because the court in *Reese* found the sections to have a "substantial" overlap in terms and involve "intricate common law concepts," the court deemed Section 2-102 ambiguous

4

and provided a brief history of that section. *Reese*, 955 F. Supp. at 873-75. The original language of Section 2-102 only covered public entities: "[a] local public entity is not liable to pay punitive or exemplary damages." *Id.* at 873 (quoting Ill. Rev. Stat. 1965, ch 85, § 2-102). In 1986, Section 2-102 was amended to its current form, which now immunizes "public officials" from punitive damages as well. *See* 745 ILCS 10/2-102. In discussing the statutory history, the court found that the 1986 amendment implied that an "expansive reading" of Section 2-102 is warranted. *See Reese*, 955 F. Supp. at 874.

The court in *Reese* attempted to reconcile Section 2-102 with Section 2-201. Section 2-201, which codified the common law doctrine of public official immunity, see *Reese*, 955 F. Supp. at 874 (citing *Horton v. Ottawa*, 352 N.E.2d 23, 24 (Ill. App. 1976)), provides total immunity to "public employees" (which the statute broadly defines as "an employee of a local public entity," 745 ILCS 10/1-207). Under the common law doctrine of public official immunity, a public official is entitled to immunity when he exercises good faith discretion in a duty that is uniquely related to the official's particular public office. *Reese*, 955 F. Supp. at 874 (internal citations omitted). Public officials who act willfully or wantonly, however, are not entitled to common law immunity. *Reese* therefore found that, under the common law, Section 2-201 incorporates a willful and wanton exception to total immunity. *See id.* at 874-75.

*Reese* concluded that to give Section 2-102 a meaning that is not totally subsumed by Section 2-201, the court must <u>not</u> include a willful and wanton exception into Section 2-102. In other words, *Reese* concluded that a public official is given total immunity under Section 2-201 only if she acts in good faith, but a public official is still immune from punitive damages under Section 2-102 even if she acts willfully or wantonly. *See Reese*, 955 F. Supp. at 875. As such, the focus of the court's analysis was on whether to include a willful and wanton exception into

5

the definition of "public official."  The court in *Reese* did not discuss whether a "public employee" is different than a "public official," but rather assumed the only way to differentiate the two was by reading in a willful and wanton exception into public employee but not into public official. The court in *Reese* never attempted to reconcile Section 2-102 with Section 2-213 in its "public official" analysis.

The Court finds the analysis in *Reese* unpersuasive for several reasons.  Broadly construing "public official" to include public employees who exercise discretion would sweep in many public employees not typically considered "public officials."  For example, the definition of "public official" in *Reese* would even cover a tumbling coach.  *See Harrison v. Hardin County Cmty. Unit Sch. Dist. No. 1*, 758 N.E.2d 848, 853 (Ill. 2001) (citing *Johnson v. Decatur Park District*, 704 N.E.2d 416 (Ill. App. 1998)).  Though the tumbling coach in *Johnson* is considered a public employee who exercises discretion, he would not ordinarily and popularly be considered a public official. The ordinary and popular meaning matters because the phrase "public official" is not defined in the Illinois Tort Immunity Act.  When a term is not defined, it is presumed to have its ordinary and popularly understood meaning.  *People v. Beachem*, 890 N.E.2d 515, 520 (Ill. 2008).

Further, Illinois courts have distinguished a public "official" from a public "employee," suggesting that the two cannot be equated.  *See Rinchich v. Bridgeview*, 601 N.E.2d 1202, 1211-12 (Ill. App. 1992); *Daniels v. City of Venice*, 516 N.E.2d 701, 703 (Ill. App. 1987).  Unlike a mere employee, an official is typically elected or appointed and has supervisory authority.  *See id.*  This usage suggests a construction of "public official" that is narrower than any public employee that exercises discretion in the performance of uniquely governmental functions; rather, it indicates a public official is more of a figurehead of an organization.

Another fundamental principle of statutory construction is to view the phrase under consideration in the context of the statute as a whole. *Hytel Group, Inc. v. Butler*, 938 N.E.2d 542, 558 (Ill. App. 2010). When the legislature amended the Local Governmental and Governmental Employees Tort Immunity Act in 1986, it added the new and undefined "public official" language to Part 1. Part 1 is entitled "Immunity of Local Public Entities." That Section 2-102, with its "public official" language, is found in Part 1 implies that the immunity conferred relates to local public entities, as both the beginning of that very section and the title of Part 1 state. Had the legislature intended "public official" to broadly cover public employees who exercise discretion, then Part 2, which is entitled "Immunity of Public Employees," would be the natural place for the amendment. The statutory framework of Article II implies that *Reese*'s definition of "public official" is too broad.

Moreover, after *Reese* was decided, the Illinois Supreme Court expressly overruled *Reese*'s interpretation of Section 2-201 that read in a willful and wanton exception. *See In re Chi. Flood Litig.*, 680 N.E.2d 265, 273 (Ill. 1997); *Ries v. City of Chicago*, 950 N.E.2d 631, 641-44 (Ill. 2011). Because Section 2-201 does not include a willful and wanton exception, and that exception was the key basis for reconciling Section 2-201 with Section 2-102, the definition of "public official" in *Reese* is called into serious question.[1] For this reason, and because the definition of "public official" in *Reese* is incongruent with the term's ordinary and popular

---

[1] It is further worth noting that after *Reese* was decided, the Illinois Supreme Court also held that Section 2-201 could only be invoked if the act or omission in question was "both a determination of policy and an exercise of discretion." *Harinek v. 161 N. Clark St. Ltd. Pshp.*, 692 N.E.2d 1177, 1181 (Ill. 1998). This further calls into question the analysis in *Reese* that assumed that defining "public official" in a way that covers willful and wanton acts was the only way to reconcile Section 2-201 with Section 2-102. Certainly, acts other than determining policy are covered by Section 2-102.

7

meaning and inconsistent with the Act's framework, this Court will not adopt *Reese*'s definition of "public official."

### III. Police Officers Are Not "Public Officials"

Having determined what "public official" does not mean, the Court must now determine whether police officers are public officials. For some of the same reasons that the Court rejects the analysis in *Reese*, it also finds that police officers sued in their personal capacities are not "public officials." For one, including the "public official" language in only Part 1 strongly implies that the immunity conferred does not broadly cover public employees (whose immunities are addressed in Part 2), but rather more narrowly covers figureheads of local public entities who are sued in their official capacities. The little bit of legislative history available also supports this narrow interpretation. The 1986 amendment that added the "public official" language was part of a bill passed in response to an insurance crisis that "had forced municipalities to close public facilities because of their inability to protect themselves with affordable insurance." *See Burke v. 12 Rothschild's Liquor Mart, Inc.*, 593 N.E.2d 522, 528 (Ill. 1992) (citing legislative history). This implies that in order to make insurance more affordable for local municipalities, the legislature was focused on reducing liability for local municipalities—not broadly protecting public employees—when it added the "public official" language to section 2-102. In fact, the Illinois legislature was very likely responding to a 1985 Supreme Court decision that explained the difference between personal capacity lawsuits and official capacity lawsuits. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (citations and quotations omitted)). Considering that the United States Supreme Court explained in 1985 that "[a]s long as the government entity receives notice

8

and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," it makes complete sense for the Illinois legislature in 1986 to have included immunity for public officials sued in their official capacities and put that new immunity under Part 1 of the Act. *See id.* at 166. By doing so, the intent of the "public official" language must have been to protect the local public entities sued via "official capacity" lawsuits. Finally, the plain and ordinary meaning of "public official" would not encompass the patrolmen sued here. *See Daniels*, 516 N.E. 2d at 703 (explaining that officials generally are "appointed to serve for a specified time, take[] an oath of office and [have] supervisory and discretionary authority which an employee does not"). Patrolmen are not commonly thought of as public officials: they are not elected or appointed and they do not have any significant supervisory or policy-making authority. Because the structure of the Act, the timing of the 1986 amendment, the legislative history, and the ordinary meaning of "public official" all counsel against finding police officers sued in their personal capacities to be "public officials," the Defendant-Officers have not shown they are entitled to immunity from punitive damages under 745 ILCS 10/2-102. Their motion is therefore DENIED.

## CONCLUSION

For the reasons explained in this order, Defendants' Motion to Dismiss, ECF No. 10, is DENIED.

Entered this 25th day of September, 2013.

s/ Sara Darrow<br>
SARA DARROW<br>
UNITED STATES DISTRICT JUDGE